UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

ANDRES OTTENWARDE,

                    Petitioner,              12 Civ. 6537 (JGK)

          - against -                        MEMORANDUM OPINION
                                             AND ORDER
UNITED STATES OF AMERICA,

                    Respondent.
————————————————————————————

JOHN G. KOELTL, District Judge:

        Andres Ottenwarde, appearing pro se, moves pursuant to
28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.
The petitioner was convicted pursuant to his plea of guilty to
one count of conspiracy to distribute and possess with intent to
distribute cocaine in violation of 21 U.S.C. §§ 846, 812,
841(a)(1), and 841(b)(1)(C).  The petitioner was sentenced
principally to time served--which amounted to approximately
eighteen months' imprisonment--and a term of three years'
supervised release.  Pursuant to a plea agreement, the
petitioner waived his right to appeal or litigate under
28 U.S.C. §§ 2255 and 2241 any sentence within or below the
Stipulated Guidelines Range of fifteen to twenty-one months'
imprisonment.  He also agreed not to challenge his conviction or
sentence on the basis of any adverse immigration consequences
(including deportation) resulting from his guilty plea and
conviction.  The petitioner primarily alleges that his defense

counsel advised him that he would not be deported if he pleaded guilty, and thereby rendered ineffective assistance under the Sixth Amendment of the United States Constitution.

## I.

On December 21, 2009, Ottenwarde waived his right to be indicted by a grand jury, and Information 09 Cr. 1206 (JGK) (the "Information") was filed to which Ottenwarde pleaded not guilty. (Presentence Investigation Report dated March 2, 2011 ("PSR") at ¶ 1.)  The Information charged Ottenwarde in one count alleging that from on or about June 3, 2009 through on or about August 20, 2009, Ottenwarde conspired with others to distribute and possess with intent to distribute 500 grams or more of mixtures and substances containing a detectable amount of cocaine.  (PSR at ¶ 2.)

On February 15, 2011, Ottenwarde appeared before this Court and pleaded guilty pursuant to a plea agreement (the "Plea Agreement") with the Government.  Under the terms of the Plea Agreement, the parties agreed that the amount of cocaine involved in the offense was at least 50 grams but less than 100 grams.  Significantly, the Plea Agreement addressed the possible immigration consequences of Ottenwarde's plea:

> The defendant recognizes that if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his

> deportation from the United States is
> presumptively mandatory and that, at a minimum,
> he is at risk of being deported or suffering
> other adverse immigration consequences.

(Plea Agreement dated January 13, 2011 ("Plea Agr.") at 5.)

The Plea Agreement also indicated that Ottenwarde had

discussed the possible immigration consequences with his

counsel:

> The defendant acknowledges that he has discussed
> the possible immigration consequences (including
> deportation) of his guilty plea and conviction
> with defense counsel. The defendant affirms that
> he wants to plead guilty regardless of any
> immigration consequences that may result from the
> guilty plea and conviction, even if those
> consequences include deportation from the United
> States. It is agreed that the defendant will
> have no right to withdraw his guilty plea based
> on any actual or perceived adverse immigration
> consequences (including deportation) resulting
> from the guilty plea and conviction. It is
> further agreed that the defendant will not
> challenge his conviction or sentence on direct
> appeal, or through litigation under Title 28,
> United States Code, Section 2255 and/or Section
> 2241, on the basis of any actual or perceived
> adverse immigration consequences (including
> deportation) resulting from his guilty plea and
> conviction.

(Plea Agr. at 5.)

At Ottenwarde's guilty plea, this Court conducted an

allocution in conformity with Rule 11 of the Federal Rules of

Criminal Procedure. Ottenwarde was placed under oath and then

answered a series of questions establishing that he was

competent to enter a guilty plea. (Transcript of Plea

Allocution on February 15, 2011 ("Plea Tr.") at 6-8.)  As to his
immigration status, Ottenwarde responded that he was not a
citizen of the United States but was a resident.  (Plea Tr. at
7.)  Ottenwarde stated that he had had a full opportunity to
discuss the case with his counsel and discuss the consequences
of entering a plea.  (Plea Tr. at 9.)  Ottenwarde acknowledged
that he was satisfied with the work of his counsel.  (Plea Tr.
at 9.)  Ottenwarde acknowledged the various rights he was giving
up by pleading guilty.  (Plea Tr. at 10-13.)  Ottenwarde
acknowledged that he consented to being charged by Information
rather than indictment.  (Plea Tr. at 14-15.)  Ottenwarde was
also advised of the nature of the charges to which he was
pleading guilty (Plea Tr. at 15-17), the maximum penalties for
those charges, and the implications of any term of supervised
release (Plea Tr. at 17-18).

The Court allocuted Ottenwarde about the immigration
consequences of his plea.  (Plea Tr. at 19-20.)  Specifically,
the Court asked Ottenwarde: "Do you understand that if I accept
your guilty plea and adjudge you guilty, that adjudication can
be used to remove you from the United States, what used to be
called 'deportation'?  Do you understand that?"  (Plea Tr. at
19.)  Ottenwarde stated that he understood.  (Plea Tr. at 19.)
The Court also asked: "Have you spoken with your lawyer about
the immigration consequences of your plea?"  (Plea Tr. at 19.)

Ottenwarde responded: "Yes.  I spoke with him and he told me that this has nothing to do with that." (Plea Tr. at 19.)  At that point defense counsel stated that he had "informed Mr. Ottenwarde that, and I am confident he understands, that under the immigration law there is a very high probability, I expressed it as 'certainty' that this has the potential of being the basis of deportation." (Plea Tr. at 19.)  Defense counsel further stated that he advised Ottenwarde that "this court does not have jurisdiction to make that determination." (Plea Tr. at 19.)  Thus, it was defense counsel's view that Ottenwarde's statement was "directed at [his] representations as to the forum in which the deportation determination would be made one way or the other." (Plea Tr. at 19.)  The Court then asked Ottenwarde if he agreed with defense counsel's statement, to which Ottenwarde responded, "Yes, I understand." (Plea Tr. at 19-20.) The Court again asked: "So you understand that a consequence of your plea of guilty if I accept the plea and adjudge you guilty, that adjudication can be used to deport you, to remove you from the United States?  Do you understand that?" (Plea Tr. at 20.) Ottenwarde responded: "I do." (Plea Tr. at 20.)

    As to the Plea Agreement, Ottenwarde acknowledged that he signed it, it was translated for him, and he discussed it with his counsel who "explained everything to" him. (Plea Tr. at

23.)  Ottenwarde acknowledged that he fully understood it before signing it.  (Plea Tr. at 23.)

The Court ensured that there was an adequate factual basis for Ottenwarde's guilty plea.  Ottenwarde admitted that he "agreed with Jose Cleaner [Garcia] to get 50 grams" of cocaine which was to be "pass[ed] on to someone else."  (Plea Tr. at 26.)  Ottenwarde admitted he was aware that his actions were illegal.  (Plea Tr. at 27.)

At the conclusion of the proceeding, the Court found that Ottenwarde understood the rights that he was giving up by pleading guilty and the consequences of his plea, and that he did so knowingly and voluntarily.  The Court further found that Ottenwarde acknowledged his guilt, that the plea was entered knowingly and voluntarily, and that the plea was supported by an independent basis in fact containing each of the essential elements of the offense.  (Plea Tr. at 29.)

Prior to sentencing, Ottenwarde's counsel filed a submission dated March 4, 2011.  Defense counsel noted that Ottenwarde had no substantive objections to the Presentence Investigation Report, and further stated in a footnote:

> Counsel remains uncertain if the account of Mr. Ottenwarde's immigration status, PSR ¶ 46, is complete.  It is possible that Mr. Ottenwarde has legal status as a permanent resident ("green card" holder).  However, the significance of whether Mr. Ottenwarde enjoys that status is largely negated by the fact that even were he to

6

be a lawful permanent resident he is still
deportable because the instant crime of
conviction is a controlled substance offense that
triggers automatic deportation.   See 8 U.S.C.
§ 1227(a).

(Defendant's Submission ("Def.'s Sub.") at 1, n.1.)   In seeking

a sentence of time served, defense counsel noted that Ottenwarde

had "already served almost the maximum guideline sentence and

faces certain deportation following his release from prison."

(Def.'s Sub. at 2.)

     The parties appeared before this Court for sentencing on

March 11, 2011.   Defense counsel noted Ottenwarde's objection to

Paragraph 46 of the Presentence Investigation Report.

(Transcript of Sentencing Hearing on March 11, 2011 ("Sentencing

Tr.") at 3.)   That paragraph stated that Ottenwarde did not have

legal status; defense counsel stated that it was "our

understanding" that Ottenwarde had legal status due to his

marriage.   (Sentencing Tr. at 3.)   Defense counsel further

stated that Ottenwarde was a citizen of the Dominican Republic.

(Sentencing Tr. at 3.)   The Court found that Ottenwarde fell

within Criminal History Category II, and with an offense level

of 13, faced a sentencing guidelines range of fifteen to twenty-

one months' imprisonment.   (Sentencing Tr. at 6.)   The Court

sentenced Ottenwarde to time served--which amounted to

approximately eighteen months' imprisonment--and a term of three

years' supervised release.   (Sentencing Tr. at 8.)   The Court

further ordered that Ottenwarde pay $1,800 in forfeiture, as well as a $100 special assessment.  (Sentencing Tr. at 9-10.) The Court confirmed that Ottenwarde had waived his right to appeal as part of the Plea Agreement.  (Sentencing Tr. at 10.) The Court nonetheless advised Ottenwarde that a notice of appeal must be filed within fourteen days after the entry of the judgment of conviction.  (Sentencing Tr. at 10.)  Ottenwarde confirmed that he understood.  (Sentencing Tr. at 11.)  The judgment of conviction was entered on March 14, 2011.

On March 28, 2012, Ottenwarde was arrested by the Department of Homeland Security ("DHS") and detained in DHS custody where he remains.  A hearing on his immigration status took place on December 17, 2012.

On June 26, 2012, Ottenwarde sought to file a direct appeal.  On June 28, 2012, this Court found that Ottenwarde's appeal was untimely because it was filed "well beyond the thirty-day grace period."  See Order dated June 28, 2012.  On or about August 27, 2012, Ottenwarde filed the present petition.

## II.

The present petition is styled as a petition pursuant to 28 U.S.C. § 2255, yet seeks relief under various forms. However, regardless of whether it is construed as a direct appeal, a petition under 28 U.S.C. § 2241, a petition under

28 U.S.C. § 2255, or a petition for a writ of error coram nobis, the present petition is defective.

## A.

The present petition cannot properly be construed as a direct appeal.  As confirmed during his sentencing, under the terms of the Plea Agreement Ottenwarde waived his right to appeal on the basis of any adverse immigration consequences. (Plea Agr. at 5; Sent. Tr. at 10-11.)  Furthermore, after being sentenced in March 2011, Ottenwarde never filed a notice of appeal.  Ottenwarde attempted to file what was deemed an appeal in June 2012, which this Court rejected as untimely.  See Order dated June 28, 2012; Fed. R. App. P. 4(b)(1)(A) (providing that a criminal defendant must file a notice of appeal within fourteen days of the "entry of either the judgment or the order being appealed").  The present petition, therefore, cannot reasonably be construed as a direct appeal.

## B.

Nor is Ottenwarde entitled to habeas relief under either 28 U.S.C. § 2241 or 28 U.S.C. § 2255.  Under the terms of the Plea Agreement, Ottenwarde waived his right to litigate under 28 U.S.C. §§ 2255 and 2241 on the basis of any adverse immigration consequences.  (Plea Agr. at 5.)

9

Furthermore, the Second Circuit Court of Appeals has observed that "[a] motion pursuant to § 2241 generally challenges the <u>execution</u> of a federal prisoner's sentence," while "§ 2255 is generally the proper vehicle for a federal prisoner's challenge to his conviction and sentence." <u>Jiminian v. Nash</u>, 245 F.3d 144, 146-47 (2d Cir. 2001) (citations omitted).  "[A]s a general rule, federal prisoners must use § 2255 instead of § 2241[] to challenge a sentence as violating the Constitution or laws of the United States." <u>Id.</u> at 147 (citing <u>Triestman v. United States</u>, 124 F.3d 361, 373 (2d Cir. 1997); <u>see also</u> <u>Cephas v. Nash</u>, 328 F.3d 98, 103 (2d Cir. 2003). Here, Ottenwarde is not challenging the way his sentence is being administered, but rather the constitutionality of his conviction and sentence.  Thus, the Court will consider the present petition under Section 2255 rather than Section 2241.

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on an application for a writ of habeas corpus under Section 2255. 28 U.S.C. § 2255(f).  The limitations period for such a claim begins to run from the date on which the judgment of conviction becomes final.  Because Ottenwarde did not file a timely direct appeal, the judgment of conviction in this case became final fourteen days after its entry on March 14, 2011.  <u>See</u> Order dated June 28, 2012; Fed. R. App. P. 4(b)(1)(A).  Ottenwarde

filed the present petition on or about August 27, 2012, well after the applicable one-year limitations period had ended.  See 28 U.S.C. § 2255(f).  Therefore, the present petition is time-barred under Section 2255.

To the extent that Ottenwarde attempts to argue that equitable tolling can be used to avoid the bar of the statute of limitations in this case, there is no merit to that argument. Equitable tolling is only appropriate in "rare and exceptional circumstances" where, despite a petitioner's reasonable diligence, "extraordinary circumstances beyond [the petitioner's] control prevented successful filing during [the required] time." Baldayaque v. United States, 338 F.3d 145, 151 (2d Cir. 2003) (quoting Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001)) (internal quotation marks omitted).

In this case, there were no exceptional or extraordinary circumstances.  Ottenwarde was aware of the immigration consequences of his plea from the time it was made, and he was aware of his defense counsel's representations as to those immigration consequences.  There was nothing that prevented Ottenwarde from seeking post-conviction relief, except his own agreement in the Plea Agreement not to pursue that relief.

Similarly, Ottenwarde cannot rely on Section 2255(f)(4), which provides that the one-year limitations period shall run from "the date on which the facts supporting the claim or claims

11

presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). Any challenge to the effectiveness of Ottenwarde's defense counsel could have been raised at any time after the plea allocution.

## C.

Moreover, Ottenwarde is not entitled to relief pursuant to a writ of error coram nobis. "Coram nobis is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." Fleming v. United States, 146 F.3d 88, 89-90 (2d Cir. 1998) (per curiam). A writ of error coram nobis is only available to a petitioner who is no longer in custody pursuant to the sentence he seeks to attack. See Cisse v. United States, 330 F. Supp. 2d 336, 340 (S.D.N.Y. 2004). A petitioner serving a term of supervised release is considered to be "in custody" for purposes of 28 U.S.C. § 2255. See Scanio v. United States, 37 F.3d 858, 860 (2d Cir. 1994).

Here, Ottenwarde is currently serving a three-year term of supervised release which was imposed as part of his sentence. Because Ottenwarde is still "in custody" for purposes of Section 2255, a writ of error coram nobis is not available to Ottenwarde at this time.

### III.

In any event, the petition is without merit.  Ottenwarde alleges that his defense counsel was ineffective by advising him that he would not be deported if he pleaded guilty.  To establish a claim of ineffective assistance of counsel, the petitioner must show both that: (1) his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) that his counsel's deficient performance was prejudicial to his case. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995).

The petitioner cannot meet the first prong of this test merely by showing that his counsel employed poor strategy or made a wrong decision.  Instead, the defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687.  In fact, there is a "strong presumption" that defense counsel's performance fell within the wide range of reasonable professional assistance, and "the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."

<u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986) (citing <u>Strickland</u>, 466 U.S. at 688-89).

To meet the second prong of the <u>Strickland</u> test, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.  Where a defendant challenges a guilty plea on the basis of alleged ineffective assistance of counsel, "the defendant must show that 'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" <u>United States v. Hernandez</u>, 242 F.3d 110, 112 (2d Cir. 2001) (per curiam) (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)).  In the context of sentencing, the petitioner must show that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different.  <u>See United States v. Workman</u>, 110 F.3d 915, 920 (2d Cir. 1997).

In this case, Ottenwarde primarily alleges that his defense counsel misrepresented the immigration consequences of Ottenwarde's guilty plea and thereby rendered ineffective assistance under <u>Padilla v. Kentucky</u>, 130 S. Ct. 1473 (2010). In support of his claim, Ottenwarde does not submit any evidence

14

other than his own assertion that his counsel assured him he would not be deported if he pleaded guilty.  However, the evidence in the record refutes the allegation that Ottenwarde's defense counsel misrepresented the immigration consequences of Ottenwarde's guilty plea.  During his plea allocution, Ottenwarde repeatedly confirmed that he understood his conviction could be used to remove him from the United States. (Plea Tr. at 19-20.)  Ottenwarde also confirmed that he had spoken with his counsel about the immigration consequences of his plea.  (Plea Tr. at 19.)  When there appeared to be confusion on the nature of these discussions, defense counsel clarified that he had advised Ottenwarde that this Court did not have jurisdiction to make the deportation determination, but had "informed Mr. Ottenwarde that, and I am confident he understands, that under the immigration law there is a very high probability, I expressed it as 'certainty' that this has the potential of being the basis of deportation."  (Plea Tr. at 19.) The Court asked Ottenwarde if he agreed with defense counsel's statement, to which Ottenwarde responded, "Yes, I understand." (Plea Tr. at 19-20.)  These statements belie Ottenwarde's allegations that his counsel previously represented to him that he would not be deported.  A defendant cannot disavow his sworn statements made at his plea allocution by making conclusory allegations in the course of a subsequent challenge to the

15

conviction or sentence.  See Blackledge v. Allison, 431 U.S. 63, 74 (1977) (a defendant's sworn statements made at his plea allocution "carry a strong presumption of verity"); United States v. Gonzalez, 970 F.2d 1095, 1101 (2d Cir. 1992) (such statements are conclusive absent a credible reason for departing from them).  No evidentiary hearing is necessary on the basis of unsupported allegations that merely contradict sworn statements made earlier at a plea allocution.  Gonzalez, 970 F.2d at 1101.

Moreover, Ottenwarde fails to present any evidence showing that he was prejudiced by any alleged advice from defense counsel concerning the immigration consequences of his guilty plea.  The evidence in the record makes clear that Ottenwarde was aware of the possible immigration consequences of his plea prior to the imposition of his sentence.  The Plea Agreement itself, which Ottenwarde confirmed he fully understood (Plea Tr. at 23), advised Ottenwarde that his "guilty plea and conviction make it very likely that his deportation from the United States is presumptively mandatory and that, at a minimum, he is at risk of being deported or suffering other adverse immigration consequences."  (Plea Agr. at 5.)  In addition, Ottenwarde repeatedly confirmed at his plea allocution that he understood his conviction could be used to remove him from the United States.  (Plea Tr. at 19-20.)  Nevertheless, Ottenwarde did not make any request to withdraw his guilty plea.  Therefore,

16

Ottenwarde has failed to establish a reasonable probability that he would have insisted on going to trial if he had received any allegedly different advice from defense counsel prior to his guilty plea.  Because Ottenwarde has failed to show that his counsel's representation was objectively unreasonable or that he suffered any prejudice, his claim for ineffective assistance of counsel does not satisfy the Strickland test.

Ottenwarde also has not demonstrated prejudice regarding his counsel's alleged failure to negotiate a hypothetical plea bargain that would have spared Ottenwarde from deportation. There is no evidence to suggest that the Government would have entered into a plea agreement that would have spared Ottenwarde from adverse immigration consequences.  Convictions for drug trafficking offenses are treated as "aggravated felonies" under immigration law, see 8 U.S.C. § 1101(a)(43)(B), thereby disqualifying the defendant for waiver or cancellation of removal under 8 U.S.C. §§ 1182(h) and 1229b(a).  While Ottenwarde contends that there was insufficient evidence of his guilt, during his plea allocution Ottenwarde himself admitted to conspiracy to distribute and possess with intent to distribute 50 grams of cocaine.  (Plea Tr. at 26.)  Given that Ottenwarde admitted to engaging in a drug trafficking crime, there is no reason to believe that the Government would have entered into a plea agreement involving an offense that would have allowed

Ottenwarde to avoid an "aggravated felony" conviction under the immigration laws.

In fact, the evidence in the record demonstrates that Ottenwarde's defense counsel did negotiate a favorable plea agreement for Ottenwarde.  Ottenwarde was charged with the offense of conspiracy to distribute and possess with intent to distribute 500 grams or more of mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846, 812, 841(a)(1), and 841(b)(1)(B), which carries a penalty of a maximum sentence of forty years' imprisonment and a mandatory minimum sentence of five years' imprisonment.  Under the terms of the Plea Agreement, however, the Government agreed that Ottenwarde could plead guilty to an offense involving a lower quantity of cocaine, in violation of 21 U.S.C. §§ 846, 812, 841(a)(1), and 841(b)(1)(C).  (Plea Agr. at 1, n.1.)  The penalty that could be imposed for that plea was a maximum sentence of twenty years' imprisonment and no mandatory minimum sentence of imprisonment.  The Plea Agreement ultimately resulted in a sentence of time served, amounting to approximately eighteen months' imprisonment, and a term of three years' supervised release.  (Sentencing Tr. at 8.)  Thus, the Plea Agreement negotiated by Ottenwarde's defense counsel was plainly a favorable plea agreement for Ottenwarde.

Additionally, had Ottenwarde proceeded to trial, the Government could have filed a prior felony information based on Ottenwarde's 2004 felony conviction for possession with intent to distribute cocaine. (PSR at ¶¶ 35-36.) The filing of that information would have resulted in Ottenwarde facing a maximum sentence of life imprisonment and a mandatory minimum sentence of ten years' imprisonment. See 21 U.S.C. § 841(b)(1)(B). Ottenwarde has not credibly shown that, facing these circumstances, he would have proceeded to trial. In sum, Ottenwarde has failed to establish a reasonable probability that, but for his counsel's alleged ineffectiveness, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the foregoing reasons, the petitioner's motion is **denied**. The Court declines to issue a certificate of appealability because the petitioner has failed to make a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C.

§ 2253(c)(2).  The Clerk is directed to enter judgment and to close this case.

      **SO ORDERED.**

**Dated:**      **New York, New York**
                  **March 28, 2013**           **__/s/_____**
                                            **John G. Koeltl**
                            **United States District Judge**